UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRANCE S. McKINNEY, | ) |
|     Plaintiff, | ) |
| v. | )   CIVIL NO. 1:15cv79 |
| THE OFFICE OF THE SHERIFF OF WHITLEY COUNTY, and SHERIFF MARK HODGES, in his individual capacity, | ) |
|     Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion to reconsider, filed by the defendants, Office of the Sheriff of Whitley County ("Whitley County") and Sheriff Mark Hodges in his individual capacity ("Hodges"), on June 11, 2018. The Plaintiff, Terrance S. McKinney ("McKinney") responded to the motion on June 25, 2018. Defendants have declined to file a reply.

For the following reasons, the motion will be denied.

Discussion

On May 21, 2018, this court entered an Order granting in part and denying in part McKinney's second motion for leave to file second amended complaint. This Order permitted McKinney to add Mark Hodges as a defendant and to pursue a Section 1981 claim against both Hodges and Whitley County.

Defendants now request that the court reconsider the motion. As they argued in their objection to the motion to amend, the Defendants again argue that the statute of limitations for McKinney's Section 1981 claim is two years, and that the two years have expired. Defendants

again rely on *Campbell v. Forest Pres. Dist of Cook Cty, Ill.,* 752 F.3d 665, 671 (7th Cir. 2014 and *Jett v. Dallas Indep. Sch. Dist*, 491 U.S. 701, 733 (1989). Inexplicably, Defendants also continue to argue that Section 1981 only applies to express written employment contracts.

McKinney has correctly noted that the motion to reconsider does not meet any category of cases where such a motion would be appropriate. There is no manifest error of law or fact to correct, nor is there newly discovered evidence to consider. However, in an attempt to insure that everyone fully understands the basis of granting the motion to amend, the Court will entertain the motion to reconsider.

McKinney has sued his employer, Whitley County, for alleged race discrimination. In his second motion for leave to file second amended complaint, McKinney sought to add former Sheriff Mark Hodges as a defendant, and to assert discrimination, retaliation and disparate treatment claims pursuant to Section 1981, against both defendants. The May 21, 2018 Order granted both of these requests.

The main issue raised by the motion to amend (and, now, the motion to reconsider) was which statute of limitations applied to the Section 1981 claims. Generally, Section 1981 has a two-year statute of limitations. Pursuant to 28 U.S.C. Section 1658, a four-year limitations period applies to causes of action "arising under an Act of Congress enacted" after December 1, 1990. A cause of action "arises under" such an enactment "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). For Section 1981, claims based on post-formation conduct, such as wrongful termination, were made possible by the Civil Rights Act of 1991, and are subject to the four-year limitations period. *Dandy v. United Parcel Service*, 388 F.3d 263, 269 (7th Cir. 2004). However,

2

government employees sued in their individual capacities are state actors for purposes of Section 1981, and such claims must be brought under Section 1983.  The crucial question, on which there appears not to be a Seventh Circuit case precisely on point, is whether a claim brought against a state actor under Section 1983, for a right secured by Section 1981, is governed by the four-year limitations period.

In the motion to reconsider, Defendants claim that *Campbell* (and by extension, *Jett*) are "precisely on point".  Defendants are wrong.  The plaintiff in *Campbell* attempted to plead a Section 1981 action against a state actor without also bringing a claim under Section 1983.  Thus, there was no need for the *Campbell* Court to consider whether the four-year limitations period of 28 U.S.C. Section 1658 applied, as the Section 1981 claim could not be brought against a state actor without an accompanying Section 1983 claim. However, in *dicta*, the Seventh Circuit noted that the "one might argue" that Section 1658's four-year statute of limitations "should apply regardless". *Campbell* at 668.  However, as the plaintiff in *Campbell* had disavowed any reliance on Section 1983, the Seventh Circuit declined to express an opinion on the issue of which statute of limitations applied to a Section 1981 claim brought through a Section 1983 claim.   As McKinney notes, the conclusion of the *Campbell* opinion states:

> Because 42 U. S. C. § 1981 does not create a private right of action against state actors, Campbell's § 1981 claim against the FPD fails to state a claim upon which relief can be granted.  Moreover, Campbell does not challenge the district court's decision to deny him leave to replead under 42 U.S.C. § 1983. Therefore the district court's order granting the FPD's motion to dismiss is affirmed.

Thus, it is clear that the Seventh Circuit in *Campbell* was not considering whether Section 1981 and Section 1983, together, require a four-year statute of limitations.  Further, the *dicta* strongly

3

suggests that if the plaintiff in *Campbell* had plead a Section 1983 action to go with his Section 1981 action, that the Seventh Circuit would have applied the four-year statute of limitations.

As this Court noted in its May 21, 2018 Order, the Eleventh Circuit has held that the four-year period applies. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336 (11th Cir. 2008). Additionally, The Seventh Circuit has held, without any real discussion, that the four-year statute of limitations applies in Section 1981 actions brought against state actors. In *Hall v. Village of Flossmoor, Ill.*, 520 Fed. Appx. 468, 473 (7th Cir. 2013), the Court held that the District Court correctly ruled that Plaintiff's Title VII and Section 1983 claims were untimely, "but was wrong about the Section 1981 claim. The Section 1981 claim has a four year statute of limitations, so it was timely." In *Moore v. City of Chicago*, 126 Fed. Appx. 745, 747 (7th Cir. 2005), an action by a Chicago police officer against the City of Chicago, the Seventh Circuit stated: "Moore also argues that the district court improperly applied a two-year rather than a four-year statute of limitations period. The City concedes that a four-year statute of limitations period is proper for claims under Section 1981". Other district courts in this Circuit have also held that the four-year limitations period of Section 1658 applies to Section 1981 claims against state actors, brought through Section 1983, holding that the limitations period for Section 1981 is an exception to the general two-year period for Section 1983. *See e.g.*, *Price v. Northern Illinois Univ.*, 2017 U.S. Dist. LEXIS 205544, *6 (N.D. Ill. Dec. 14, 2017); *Sams v. City of Chicago*, 2014 WL 6685809, *6 (N. D. Ill. Nov. 25, 2014).

Additionally, as McKinney notes in his response to the motion to reconsider, *Nitch v. Ester*, No. 16-CV-06033, 2017 U.S. Dist. LEXIS 171338, 2017 WL 465088, ad *4 n. 5 (N.D. Ill. Oct. 17, 2017), correctly analyzes the issue:

4

> [I]n *Abrams*, the Supreme Court also stated, albeit in *dicta*, that § 1658's four-year statute of limitations "would seem to apply" to a § 1983 claim enforcing substantive rights that were created after enactment of the general four-year statute of limitations in § 1658. *See Abrams*, 544 U.S. at 124 n.5. And indeed, it appears that the Court found no tension between its statements that the nature of the right asserted has no bearing on the statute of limitations applicable to a claim asserting the right and its statement that the date the right was created seemingly would, because the Court considered the substantive argument advanced by the petitioner city under both assumptions—that the borrowed state statute of limitations applied and that § 1658 applied. *See* 544 U.S. at 124-125.
>
> Although the Court did not tackle the question in *Abrams*, and the Seventh Circuit similarly demurred in *Campbell*, both seem to be pointing down the trail blazed by *Donnelley*. The entire premise underlying the "borrowing" of state law personal injury statutes of limitation is that there was not a federal statute applicable to the claim. *See Wilson*, 471 U.S. at 266-69. But the enactment of § 1658 invalidated that premise. State law fills gaps in federal civil rights statutes only so far as it is not inconsistent with federal law. *Id*. at 269; 42 U.S.C. § 1988. But with the enactment of § 1658, there is no limitations period gap to fill with state law, and applying shorter state law limitations periods than the four-year period now provided in § 1658 is seemingly "inconsistent with" the federal limitations period. And while the *Donnelley* Court concluded that "settled expectations provide a valid reason to reject an interpretation of § 1658 under which any new amendment to federal law would suffice to trigger the 4-year statute of limitations," 541 U.S. at 381-82, such concerns do not apply in the context of claims newly created after the enactment of § 1658. As to those claims, whether brought under § 1981 or § 1983, there is an available federal statute of limitations. The defendants have advanced no rationale for continuing to apply state personal injury limitations periods to claims asserted against state actors that would, if asserted against private actors be subject to the federal four-year statute and none suggests itself to the Court.

*Id*. at 17-18.

Thus, this Court reiterates the holding in its May 21, 2018 Order that McKinney, who is bringing his Section 1981 claim through a Section 1983 claim, is entitled to the four-year statute of limitations provided by Section 1658.

Next, Defendants request this Court to reconsider its ruling that McKinney need not have an express written employment contract to be protected by Section 1981. Defendants also

5

reiterate their argument that McKinney must plead a "custom or policy" of the Defendants that violated his right to make contracts.

With respect to the asserted need to have an express written employment contract, Defendants should read *Walker v Abbott Laboratories*, 340 F.3d 471, 478 (7th Cir. 2003):

> There is no dispute, however, that even as amended § 1981's protections still center on contractual rights and that proof of a contractual relationship is necessary to establish a § 1981 claim. *See Perry*, 199 F.3d at 1132; *Gonzalez*, 133 F.3d at 1034. The parties here do not dispute that Walker was an at-will employee and therefore that either party to the employment relationship could terminate his employment at any time. As noted above, in *Gonzalez*, this Court opined in dicta that an at-will employment relationship might not be sufficiently contractual to support § 1981 claims for discriminatory termination. 133 F.3d at 1035. We explicitly stated in our opinion, however, that we "need not determine" the issue because *Gonzalez* had provided no evidence of discrimination, and so her claim failed on that basis. *Id.*; see also *Staples v. Pepsi-Cola Gen. Bottlers, Inc.*, 312 F.3d 294, 298 n. 3 (7th Cir.2002) (noting that *Gonzalez* discussed the issue but ultimately left it "for another day"). Before *Gonzalez*, this Court in *McKnight v. GMC* took the view that "[e]mployment at-will is not a state of nature but a continuing contractual relation. A contract for employment at will may end abruptly but it is a real and continuing contract nonetheless." 908 F.2d 104, 109 (7th Cir.1990). *Gonzalez* questioned the continued validity of this position since in *McKnight* we had relied on the now-overruled *Patterson* decision. *See Gonzalez*, 133 F.3d at 1035. Not surprisingly, Walker urges us to disregard the *Gonzalez dicta* and revive *McKnight*; whereas Abbott contends that we should follow *Gonzalez*.
>
> We note that since our decision in *Gonzalez*, every circuit court to address the issue, five in all, have held that at-will employees can state claims under § 1981. *See Skinner*, 253 F.3d at 342; *Lauture*, 216 F.3d at 260; *Perry*, 199 F.3d at 1133; *Spriggs*, 165 F.3d at 1018-19; *Fadeyi*, 160 F.3d at 1049-50. Much as we did in *McKnight*, these courts have found that at-will employment, though capable of being terminated by either party at any time, is nonetheless a contractual relationship.
>
> Our review of § 1981's statutory language reveals no intent by Congress to give the word "contract" in § 1981 any specialized meaning; thus, we must assume that the ordinary meaning was intended. *See Lauture*, 216 F.3d at 261; *Spriggs*, 165 F.3d at 1018. According to the Second Restatement of Contracts, a contract is "a promise or a set of promises for the breach of which the law gives a remedy, or

the performance of which the law in some way recognizes as a duty." restatement (Second) Of Contracts § 1 (1981). Several courts have recognized that under this definition, at-will employment creates a contract because the employer promises to pay the employee for certain work and the employee accepts the offer by beginning work. *See, e.g., Skinner*, 253 F.3d at 340 ("[Employer] offered, either implicitly or explicitly, to pay [plaintiff] for performance of services. [Plaintiff] accepted that offer by performance."); *Lauture*, 216 F.3d at 261 ("[Plaintiff's] promise to work for [employer], as consideration for [employer's] promise to pay her, was a contract."); *Spriggs*, 165 F.3d at 1018 ("[Plaintiff's] performance of the assigned job duties was consideration exchanged for [employer's] promise to pay. The parties' actions thus created a contractual relationship."). There is no dispute that this is the situation here: Abbott employed Walker on an at-will basis, offering, either implicitly or explicitly, to pay him for the performance of specified work, and Walker accepted that offer by either promising to or actually performing the work.

The lack of a fixed duration of employment does not make the relationship any less contractual. As we noted in *McKnight*, at-will employees, though capable of losing or quitting their employment at any time, are not totally without enforceable contractual rights: "Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract." 908 F.2d at 109 (citation omitted). As another court noted, in all at-will employment relationships, employees maintain "the right to treat the employer's failure to pay for work done by the employee prior to termination of the employment relationship as a breach of contract." *Skinner*, 253 F.3d at 341-42. Moreover, the Restatement contemplates that at-will employment relationships are contractual even though they lack a term of duration. *See* restatement (Second) Of Contracts § 33 cmt. d, illus. 6 (1981); *see also Spriggs*, 165 F.3d at 1018.

Some courts have looked to the state-law definition of "contract" to cast further light on whether at-will employees have sufficient contractual rights to maintain § 1981 claims. *See, e.g., Skinner*, 253 F.3d at 340 (finding that under Missouri law the plaintiff's at-will employment "had all the essential elements of a valid contract"); *Fadeyi*, 160 F.3d at 1050 (same under Texas law). Walker contends that Illinois law recognizes at-will employment relationships as contractual, and Abbott makes no argument to the contrary. From our review of the case law, it does appear that Illinois courts generally treat at-will employment relationships as contractual in nature. *See, e.g., Fellhaver v. Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (Ill.1991) (recognizing employment at will as a contract for employment with an indefinite duration); cf. *Callis, Papa, Jackstadt, and Halloran. P.C. v. Norfolk & W. Ry.*, 195 Ill.2d 356, 254 Ill.Dec. 707, 748 N.E.2d 153, 161 (Ill.2001) ("The relationship between the law firm and [employee] is a

> contractual, at-will relationship. Until such a relationship is terminated, the at-will contract is of value to the law firm.").
>
> Finally, a finding that at-will employees cannot state a § 1981 claim would appear to contravene Congress's intention in the Civil Rights Act of 1991 to "restor[e] the broad scope of Section 1981[to] ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." H.R. Rep. No. 102-40(II), at 2 (1991). Congress's intent to secure protection of all employees is further evident in its explicit disapproval of the way in which the Supreme Court in *Patterson* limited § 1981's application. *See* S.Rep. No. 101-315, at 14 (1990) (finding "a compelling need for legislation to overrule the Patterson decision and ensure that federal law prohibits all race discrimination in contracts"). Given these inclusive intentions, we find it difficult to believe that Congress would have sought to exclude from § 1981's protections the large portion of the employees in this country who work under at-will employment contracts. As other courts have noted, excluding at-will employees from § 1981 protection "would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws." *Fadeyi*, 160 F.3d at 1052 (quotation omitted); *see also Skinner*, 253 F.3d at 340 n. 1; *Lauture*, 216 F.3d at 264.
>
> \* \* \*
>
> For the reasons stated above, we hold that Walker's at-will employment relationship with Abbott is sufficiently contractual in nature to maintain a § 1981 action for discrimination in promotion and pay.

*Id*.

Thus, Defendants are clearly and utterly wrong in their assertion that McKinney must have had an express written contract to bring a Section 1981 action.

Defendants assert that *Domino's Pizza, Inc. v. McDonald*, 506 U.S. 470, 474-75, 479-80 (2006), states that a "contract" is required to bring a Section 1981 action, and apparently glean from this that such a contract must also be a written contract. The facts in *Domino's* are not even close to the facts in the present case. In *Domino's*, the issue was whether a non-party to a contract could bring a Section 1981 claim. In a decision delivered by Justice Antonin Scalia, the Supreme Court ruled that Section 1981 only apples to those who have enforceable rights under

the contract, *i.e.*, actual parties to the contract and not their agents. Although the contracts at issue in *McDonald* were written contracts, there is nothing in *McDonald* suggesting that an employee at will may not bring a Section 1981 action.

Defendants also assert that McKinney must show that the alleged violation of his contractual rights was caused by a custom or policy within the meaning of *Monell* and subsequent cases. Again, Defendants (and their counsel) fail to understand settled civil rights law. The law is clear that there are three ways to state a claim for municipal liability: (1) express policy of the municipality; (2) widespread, well-settled practice that effectively constitutes a municipal policy, or (3) acts by a person with final policymaking authority. *Williams v. City of Chicago*, 2017 U.S. Dist. LEXIS 116730 *26; 2017 WL 3169065 (N.D. Ill. 2017)(citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2011)(citing *Monell*, 436 U.S. at 690)). In the present case, it is clear that McKinney relies on the third method. McKinney has consistently alleged that Sheriff Mark Hodges was the individual with the final policymaking authority who violated McKinney's rights. Clearly, McKinney's claims fit within *Monell*.

Accordingly, as there is no basis to reverse any of the holdings in the May 21, 2018 Order granting in part the motion to amend, Defendants' motion to reconsider will be denied.

### Conclusion

On the basis of foregoing, Defendants' motion to reconsider [DE 81] is hereby DENIED.

Entered: July 17, 2018.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court